UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW DIETERLE,

    Petitioner,

v.                                                    CASE NO. 8:16-cv-368-T-02CPT

SECRETARY, DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____/

## ORDER

Matthew Dieterle, a Florida prisoner, initiated this action for habeas corpus relief pursuant to 28 U.S.C. Section 2254. (Dkt. 1). Upon consideration of the petition and memorandum, the Court ordered Respondent Secretary, Department of Corrections, to show cause why relief sought in the petition should not be granted. (Dkt. 4). Thereafter, Mr. Dieterle moved to amend his petition, and the Court granted his request. (Dkts. 6, 8). Mr. Dieterle then filed his amended petition (Dkt. 9), and Respondent filed a response in opposition to the petition, along with the state court record. (Dkts. 16, 18). Mr. Dieterle then filed a reply. (Dkt. 21).

### I.    PROCEDURAL HISTORY

Mr. Dieterle was charged by indictment with first degree murder. (Dkt. 18 Ex. 1). The charges stemmed from the August 1, 2007, death of University of Tampa student Samantha MacQuilliam, Mr. Dieterle's girlfriend. The victim was found by a roommate; she had been beaten, stabbed, strangled, and left in the tub of the master bathroom in the home she shared with Mr. Dieterle and several friends. (Dkt. 18 Ex. 2 Vol. III at 351–54; Vol. V at 585–86; Vol. X at 1335–52).

Following a jury trial held in 2010, Mr. Dieterle was convicted of first degree murder and he was sentenced to life in prison. (Dkt. 18 Exs. 2, 3, 4). The state appellate court affirmed his convictions and sentences, per curiam. (Dkt. 18 Ex. 8); *Dieterle v. State*, 93 So. 3d 1024 (Fla. 2d DCA 2011) (table).

Mr. Dieterle then filed a motion in state court to correct illegal sentence, which was denied. (Dkt. 18 Exs. 9, 10). The state appellate court affirmed the denial without a written opinion. (Dkt. 18 Ex. 12); *Dieterle v. State*, 185 So. 3d 1242 (Fla. 2d DCA 2016) (table). He filed a motion and amended motion for post-conviction relief, pursuant to Rule 3.850, Florida Rules of Criminal Procedure. (Dkt. 18 Exs. 14, 16). The state post-conviction court denied the motion (Dkt. 18 Ex. 19), and the state appellate court affirmed the denial, per curiam. (Dkt. 18 Ex. 21); *Dieterle v. State*, 160 So. 3d 423 (Fla. 2d DCA 2015) (table).

Mr. Dieterle then filed the instant federal habeas petition and subsequent amended petition in this Court. Upon review, the Court can resolve the entire petition on the basis of the record. Therefore, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## II.   GOVERNING LEGAL PRINCIPLES

Because the petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*,

537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

3

Under section 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

In evaluating a petitioner's claim, a federal habeas court must first identify the highest state court decision, if any, that adjudicated the claim on the merits. *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). Where that state court's adjudication is not accompanied by a reasoned opinion, the United States Supreme Court has explained that:

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B. Ineffective Assistance of Counsel Standard

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However,

"counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691–92. To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the " 'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted). If a claim of ineffective assistance of counsel can be resolved through one of *Strickland*'s two prongs, the other prong need not be considered. *Strickland*, 466 U.S. at 697; *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

III. ANALYSIS

A. Ground One

In ground one, referring to the first issue raised on direct appeal in state court, Mr. Dieterle claims that the "[t]rial [c]ourt [e]rred in [d]enying [his] motion for mistrial when the prosecution's collateral crime evidence became a feature of the trial and was used . . . to prove [his] bad character

or propensity for criminal behavior." (Dkt. 9 at 5; Dkt. 18 Ex. 5 at 27–36). Specifically, he contends that the trial court improperly admitted *Williams* rule[1] evidence of a May 11, 2007, domestic violence incident between himself and the victim, including a tape recording of a voicemail he left for one of the victim's friends, the tape recording of a 911 call made on May 11, 2007, regarding the domestic violence incident, and testimony from a number of witnesses. (Dkt. 18 Ex. 5 at 30–36; Ex. 2 Vol. VIII at 1046–48, 1056–72, 1074–76, 1083–84).

Mr. Dieterle raised this claim as issue one on direct appeal. (Dkt. 18 Ex. 5 at 27–36). The state appellate court affirmed his convictions and sentences, per curiam. (Dkt. 18 Ex. 8); *Dieterle v. State*, 93 So. 3d 1024 (Fla. 2d DCA 2011) (table). Respondent contends that this issue is not cognizable on federal habeas review because Mr. Dieterle did not argue that the admission of collateral crimes evidence or the denial of his motion for mistrial violated a provision of the United States Constitution. (Dkt. 16 at 7–8). Respondent also contends that the issue is procedurally barred because it was not properly preserved for appellate review in the state court. Respondent asserts that counsel did not argue, when moving for a mistrial, that the collateral evidence became a feature of the trial. (Dkt. 16 at 8–9).

Upon review, the Court need not decide the issue of whether Mr. Dieterle raised the constitutional nature of the claim in state court, because the record reveals that the issue was not raised, in the first instance, in the trial court. (*See* Dkt. 18 Ex. 2 Vol. IX at 1112). Under Florida law, "to raise a claimed error on appeal, a litigant must object at trial when the alleged error occurs," absent a demonstration of fundamental error. *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003)(citing *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1988)). "[A]n appellate court will not

---

[1] Under the *Williams* rule, evidence of collateral crimes is admissible "[i]f found to be relevant for any purpose save that of showing bad character or propensity." *Williams v. State*, 110 So. 2d 654, 662 (Fla. 1959).

consider an issue unless it was presented to the lower court," except in cases of fundamental error. *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982). The argument on appeal "must [also] be the specific contention asserted as [the] legal ground for the objection." *Id.* (citing *Haager v. State*, 90 So. 812, 813 (1922); *Kelly v. State*, 45 So. 990 (1908); *Camp v. Hall*, 22 So. 792 (1897); *Black v. State*, 367 So.2d 656 (Fla. 3d DCA 1979)).

Mr. Dieterle raised on appeal the issue that the collateral crime evidence became a feature of the trial. However, counsel did not raise the motion for mistrial contemporaneously at trial, but, instead, raised it the day following the testimony of Adrianne Chase, to which the motion pertained. Further, when moving for mistrial, counsel did not argue that the collateral crime evidence became a feature of the trial or that a mistrial was required based on presentation of the voicemail and 911 call recordings or the other witnesses' testimony. (Dkt. 18 Ex. 2 Vol. IX at 1112).[2] Nor were such arguments asserted during Ms. Chase's testimony — counsel argued only that portions of her testimony and the recording of her 911 call were inadmissible hearsay. (Dkt. 18 Ex. 2 Vol. VIII at 1059–62, 1064).

Mr. Dieterle challenges Respondent's argument that his claim is defaulted, noting that the state appellate court did not issue a written explanation for its decision affirming his conviction and sentence. (Dkt. 21 at 6). It is true that, generally, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court has

---

[2] Counsel argued only the following:

> Judge, yesterday Adrianne Chase testified in the afternoon and we had some objections -- standing objection, etc. The lawyers independently each thought that we probably should have moved for mistrial at several points during her testimony, so I'll go ahead and make that motion now for the record.

(Dkt. 18 Ex. 2 Vol. IX at 1112).

7

adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). However, "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99–100. "While the *Richter* presumption is a strong one that may be rebutted in unusual circumstances, it is not irrebuttable." *Johnson v. Williams*, 568 U.S. 289, 302 (2013).

Respondent argued in response to Mr. Dieterle's direct appeal that, among other things, the motion for mistrial was directed only to the testimony of Adrienne Chase, that the motion itself was not timely, and that Mr. Dieterle did not argue *Williams* rule evidence was improperly admitted. (Dkt. 18 Ex. 7 at 7–8). Given Florida law and Respondent's response to the appeal, the Court concludes that it is more likely the state appellate court resolved the claim by applying its longstanding procedural bar than by adjudicating the claim on the merits. *See Richter*, 562 U.S. at 99–100. *See also Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("[W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case.").

The state appellate court's rejection of the claim, therefore, rested on an independent and adequate state procedural ground precluding habeas review. *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001); *see also Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). As Mr. Dieterle fails to demonstrate the requisite cause and prejudice or fundamental miscarriage of justice required to overcome the default, this claim is procedurally barred and is denied. *See Coleman*, 501 U.S. at 750.

B. <u>Ground Two</u>

In ground two, pointing to his appellate brief in state court, Mr. Dieterle contends that the

trial court erred by "allowing evidence of an inculpatory hearsay statement against [him] with no basis for admission, in violation of [his] [S]ixth [A]mendment right to confrontation." (Dkt. 9 at 7; Dkt. 18 Ex. 5 at 37–40). In his state appellate brief, Mr. Dieterle argued that the trial court improperly permitted testimony from Detective Keith Johnson, over a hearsay objection, concerning records that he investigated at the tanning salon frequented by the victim. (Dkt. 18 Ex. 5 at 38). Prior to Officer Johnson's testimony, roommate Kyle Bennett had testified that Mr. Dieterle told him the victim went to the tanning salon on August 1, 2007. (Dkt. 18 Ex. 2 Vol. V at 539). Officer Johnson testified that the victim was not at the tanning salon on August 1 and had last been there on July 30. (Dkt. 18 Ex. 2 Vol. VIII at 929). On appeal, Mr. Dieterle contended that the error in admitting the testimony violated his right to confrontation and amounted to reversible error, as the prosecution used the evidence to prove Mr. Dieterle lied to Mr. Bennett because the victim was already dead. (Dkt. 18 Ex. 5 at 37–38, 39–40).

However, as Respondent notes, while counsel objected on grounds of hearsay, counsel did not object at trial based on a Sixth Amendment Confrontation Clause violation. As explained with regard to ground one, to preserve an argument for appeal, Florida law requires contemporaneous objection on the same basis as to be raised on appeal. *See F.B.*, 852 So. 2d at 229; *Steinhorst*, 412 So. 2d at 338. A habeas petitioner is also required to present the federal nature of his or her claim in each appropriate state court. "[A] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Respondent argued in response to Mr. Dieterle's appeal that the Confrontation Clause issue was not raised in the trial court. (Dkt. 18 Ex. 7 at 11). Given counsel's failure to raise a Confrontation Clause violation at trial, Florida law, and Respondent's argument in response to the

9

appeal, the Court concludes that it is more likely the state appellate court resolved the claim by applying its procedural bar than by adjudicating the claim on the merits. *See Richter*, 562 U.S. at 99–100. *See also Johnson*, 568 U.S. at 302 n.3 ("For example, when a defendant does so little to raise his claim that he fails to 'fairly present' it in 'each appropriate state court,' *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004), the *Richter* presumption is fully rebutted."); *Tower*, 7 F.3d at 211 (11th Cir. 1993). Accordingly, this claim is procedurally defaulted.

The Court concludes that the state appellate court's rejection of the claim rested on an independent and adequate state procedural ground precluding habeas review. *See Coleman*, 501 U.S. at 729-30; *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). As Mr. Dieterle fails to demonstrate the requisite cause and prejudice or fundamental miscarriage of justice required to overcome the default, this claim is denied. *See Coleman*, 501 U.S. at 750.

C. Ground Three

In ground three, Mr. Dieterle, citing his supplemental state appellate brief, claims the trial court "[e]rred in denying [his] motion for continuance based on the need to investigate a possible insanity defense and, in so doing, violated [his] right to due process." (Dkt. 9 at 8; Dkt. 18 Ex. 6 at 3–7).

However, the AEDPA precludes federal courts from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b)(1). In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275-76) (quotation marks omitted). The petitioner must apprise the state court

of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). The "mere similarity" of a petitioner's state law claim with a potential federal claim is insufficient to establish exhaustion. *See Duncan*, 513 U.S. at 366.

While Mr. Dieterle argued to the state appellate court that failure to grant the requested continuance violated his right to due process, he cited only Florida law and did not claim a violation of his *federal* due process rights. Accordingly, he did not fairly present his federal claim to the state court, and his claim is procedurally defaulted. Because he fails to demonstrate the requisite cause and prejudice or fundamental miscarriage of justice required to overcome the default, *see Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001), this claim is denied.

D. Ground Four

In ground four, Mr. Dieterle contends that the trial court erred in denying his motion to correct illegal sentence, filed in state court. (Dkt. 9 at 10). He claims that Florida Statutes Section 775.082(3)(a)(4) is unconstitutional under the Eighth Amendment to the United States Constitution and Article I, Section 17 of the Florida Constitution because a "life" sentence is indefinite. (Dkt. 9 at 10).

He raised a similar claim in his motion to correct illegal sentence in state court. (Dkt. 18 Ex. 9). The state court, affirmed by the state appellate court, denied relief, explaining:

> Defendant's motion alleges that his life sentence is unconstitutional because it is an indefinite sentence in violation of article I, section 17 of the Florida Constitution. Defendant is not entitled to relief because a life sentence is not an indefinite sentence. The Florida Supreme Court squarely addressed this issue in *Ratliff v. State*, 914 So. 2d 938, 940 (Fla. 2005):
>
> The fact that the judicial system has no way of knowing how long the defendant will live and therefore cannot know how long the defendant will be incarcerated does not render a life sentence unconstitutionally indefinite. It is abundantly clear that the Legislature, by prescribing a sentence of life

11

> imprisonment, intends that the defendant remain in prison for the rest of his life. The term "life" is sufficiently definite so that it can be understood and applied. There is nothing indefinite about such a sentence.
>
> Accordingly, because we hold, constituent with *Alvarez*, that a sentence of life imprisonment does not violate article 1, section 17, we deny the petitions for writs of habeas corpus on the merits.
>
> (Internal citations omitted). As in *Ratliff*, Defendant's life sentence is not indefinite and does not violate article 1, section 17 of the Florida Constitution. The title of Defendant's motion also cites the Eighth Amendment to the United States Constitution, but the Court is unable to discern from his motion any argument as to why the Defendant's sentence is unconstitutional under that amendment. Defendant's motion is therefore denied.

(Dkt. 18 Ex. 10 at 29–30; Ex. 12).

The question of whether Mr. Dieterle's life sentence violates the Florida Constitution is a question of state law, and the state court's ruling on that issue binds this court. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). Accordingly, Mr. Dieterle has not demonstrated that the state court's decision on that issue was contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. That claim is denied.

As for the other part of his claim, Mr. Dieterle mentioned the Eighth Amendment in the title of his state court motion to correct illegal sentence (Dkt. 18 Ex. 9 at 10), but he failed to present any argument in the motion addressing his Eighth Amendment claim, and he cited only Florida law. (Dkt. 18 ex. 9 at 10–16). He has also failed to present any argument regarding the Eighth Amendment in his federal habeas petition. He asserts only that the claim raised in the state

court was the "substantial equivalent" of his habeas claim. (Dkt. 21 at 10). The Court, accordingly, concludes that Mr. Dieterle failed to sufficiently present the federal nature of his claim in state court. *See Duncan*, 513 U.S. at 366 (explaining that the "mere similarity" of a petitioner's state law claim with a potential federal claim is insufficient to establish exhaustion). Because he fails to demonstrate the requisite cause and prejudice or fundamental miscarriage of justice to overcome the default, *see Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001), this claim is denied.[3]

Finally, even were the claim properly presented to this Court, the Court has found no Supreme Court precedent holding that a sentence of life imprisonment is unconstitutional on the basis that the sentence is indefinite. Accordingly, Mr. Dieterle has not shown that the state court's decision was contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. This claim is denied.

E. Grounds Five & Six

In ground five, Mr. Dieterle asserts a claim of ineffective assistance of counsel for "failure to investigate [his] case." (Dkt. 9 at 12). In ground six, he claims ineffective assistance for "failure to investigate the insanity issue and properly present the argument in support thereof." (*Id.*). For both claims, he refers the Court to his argument in the first issue presented in his Rule 3.850 motion for post-conviction relief in state court (*id.*); and, in his reply, he concedes that he set forth these issues as only one claim in his post-conviction motion. (Dkt. 21 at 10). Therefore, the Court will address the claims together.

In his amended motion for post-conviction relief, Mr. Dieterle claimed that his counsel did not ask him about his mental history or condition until about a month before trial. (Dkt. 18 Ex. 16

---

[3] Moreover, even if he had exhausted his claim in state court, his failure to present any argument regarding the Eight Amendment in his federal habeas petition renders the claim waived. *See e.g., Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

at 91). He states that he sustained a head injury in grade school, received extensive psychiatric and psychological treatment, and had been prescribed medication to treat depression. (*Id.*). He also claims that he did not know the difference between right and wrong at the time of the offense. (*Id.*). His counsel arranged for an examination with Dr. Edward Willey, who determined that Mr. Dieterle "might" have been insane at the time of the offense. (*Id.*).

The state post-conviction court, affirmed by the state appellate court, denied relief, explaining:

> The Court finds that the Defendant is not entitled to relief on this claim, as the record refutes the contention that a defense of insanity would have been a viable defense. *See Cotto* [*v. State*], 89 So. 3d [1025,] 1029 [(Fla. 3d DCA 2012)] (holding that in order to show prejudice for a counsel's failure to investigate an insanity defense a defendant must establish a reasonable probability that such an investigation would have resulted in the presentation of a viable insanity defense). The defense of insanity requires a defendant to prove that "by reason of mental disease or defect, (1) he does not know the nature or consequences of his or her act; or (2) he is unable to distinguish right from wrong." *See Patton v. state*, 878 So. 2d 368 (Fla. 2004).
>
> After the jury returned its verdict in this case, and prior to sentence being imposed, the Court made the following observation on the record:
>
>> THE COURT: There's a couple things that I think want to indicate on the record before I impose sentence. I guess, first, that I think the jury's verdict was -- speaks of one of the overwhelming evidence that was presented in this case. It really was overwhelming physical evidence in this case.
>>
>> And I can't help but a little bit address the issue that we had right before the trial as far as the request for the continuance for the need to look at an insanity defense. If there's any behavior post act that showed somebody had all of their wits about them, it would have been Mr. Dieterle's acts after this crime occurred and the many and different types of ways that he tried to cover up what he did.
>>
>> The idea that he wasn't sane at the time or wasn't in full possession of his wits is totally undermined by the evidence that was presented in this case relative to the phone calls, to the covering up of the physical evidence, to trying to throw everybody off as to what was going on.

> (*See* Exhibit B: Trial Transcript, pp. 1521–23). In light of overwhelming physical evidence against him and the Defendant's behavior in trying to cover up the crime, as indicated by the Court at sentencing, a defense that he did not understand the nature or consequences of his act, or that he did not know right from wrong, is not likely to have been successful. Therefore, the Defendant has failed to demonstrate that a reasonable probability exists that the outcome of the trial would have been different had counsel adequately investigated and presented an insanity defense.

(Dkt. 18 Ex. 19 at 171–72; Ex. 21).

The record supports the state court's decision. In the evening of August 2, 2007, a roommate found the victim, deceased, in the master bathroom of the home she shared with her boyfriend, Mr. Dieterle. (Dkt. 18 Ex. 2 Vol. V at 568–71, 585). Evidence was elicited at trial that the victim had not shown up for her 1:00 p.m. college exam on August 1, 2007. (Dkt. 18 Ex. 2 Vol. IX at 1115–16). Phone records showed no outgoing phone calls from the victim's phone after 11:09 p.m. on July 31, 2007. (Dkt. 18 Ex. 2 Vol. VIII at 946–49). The afternoon of August 1, 2007, Mr. Dieterle informed one of his roommates that the victim was at the tanning salon, that he and the victim were going to Tallahassee that day to visit a friend, that they were going to return on August 2, and that they were going to take his dog with them. (Dkt. 18 Ex. 2 Vol. V at 536–39). Mr. Dieterle then drove to his father's house in Maryland; early in the morning on August 2, 2007, his father discovered him asleep in his car in the driveway. (Dkt. 18 Ex. 2 Vol. VIII at 1087–88). Later on August 1, 2007, one of the roommates tried to get some toilet paper from the master bedroom, but the door appeared locked. (Dkt. 18 Ex. 2 Vol. V at 540).

On August 2, 2007, Mr. Dieterle made a series of phone calls to the victim's cellphone and left numerous voicemails between August 2 and August 3, 2007. (Dkt. 18 Ex. 2 Vol. IX at 1204–09). He also made calls to multiple companies offering polygraph services. (Dkt. 18 Ex. 2 Vol. IX at 1211–13). On August 2, 2007, when contacted by Juli Emmert-Gillian, his cousin, he told her he was in Tallahassee and that he and the victim had had a fight. (Dkt. 18 Ex. 2 Vol. IV at

424–25). Mr. Dieterle was contacted by his roommates the evening of August 2, 2007, regarding groceries, but he never met them at the grocery store, though he said he would. (Dkt. 18 Ex. 2 Vol. V at 544–45; 580–81). While his roommates were at the grocery store, Mr. Dieterle called one of them and asked where the victim was, stating her car was not at home; however, the roommate had seen her car at home before leaving for the grocery store. (Dkt. 18 Ex. 2 Vol. V at 543–44). Her car remained parked at the house when they returned from the store. (Dkt. 18 Ex. 2 Vol. V at 545).

After the victim was found deceased, one of the roommates made a controlled call to Mr. Dieterle's father, Robert Dieterle, at the direction of police. Robert Dieterle stated that Mr. Dieterle was with him in Maryland. (Dkt. 18 Ex. 2 Vol. V at 585–97). A detective testified that the tanning salon had no record that the victim had been there on August 1. (Dkt. 18 Ex. 2 Vol. VIII at 929). Bloody towels were found in the bathroom, along with swipe marks on the edge of the bath tub, and a towel bar in the bathroom was missing. (Dkt. 18 Ex. 2 Vol. V at 633–34; Vol. VI at 724–45; Vol. VII at 840–51). Finger and palm prints lifted from the edge of the bathtub and the bedroom door matched those of Mr. Dieterle. (Dkt. 18 Ex. 2 Vol. IX at 1130-38).

Given this extensive evidence of his deception, the state court reasonably concluded that counsel's presentation of an insanity defense was not likely to have been successful. As he has not demonstrated a reasonable probability that the outcome of the trial would have been different had counsel presented an insanity defense, Mr. Dieterle has not demonstrated the prejudice required by *Strickland*, 466 U.S at 694, and has, therefore, failed to demonstrate ineffective assistance. Grounds five and six are denied.[4]

---

[4] Mr. Dieterle also claims that counsel admitted incompetence when moving to continue the trial by "sign[ing] a certificate of good faith to the effect that [he] had a potentially viable insanity defense that [counsel] had not properly

F. Ground Seven

In ground seven, Mr. Dieterle contends that he was deprived of his rights to due process and a fair trial, contrary to the Florida and federal constitutions, because trial counsel failed "to properly present or pursue the defense of insanity." (Dkt. 9 at 14). This claim, however, is essentially the same as the claim presented in grounds five and six — which Mr. Dieterle concedes (Dkt. 21 at 15) — and is, therefore, denied for the same reason.

Furthermore, to the extent he claims the alleged ineffective assistance violated his rights under the Florida Constitution, that claim was not presented to the state court, and is, therefore, unexhausted and procedurally defaulted. *See* 28 U.S.C. § 2254(b)(1). Mr. Dieterle cites *Martinez v. Ryan*, 566 U.S. 1 (2012), in support of his position that the claim is not barred as unexhausted. In that case, the Supreme Court explained:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17. To demonstrate that a defaulted claim of ineffective assistance of counsel is "substantial," the petitioner "must demonstrate that the claim has some merit." *Id.* at 14. "The substantiality of the ineffective-assistance-of-trial-counsel claim . . . [is] analyzed under the familiar framework set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984 )." *Ayestas v. Davis*, 138 S. Ct. 1080, 1096 (2018).

---

investigated." (Dkt. 21 at 17–18). The record reflects that, at the hearing on the motion to continue the trial, counsel indicated that the defense had hired a psychiatrist for a different, unspecified, purpose, but for some reason the psychiatrist could not rule out insanity. (Dkt. 18 Ex. 23 at 4). When the defense otherwise started unraveling, Mr. Dieterle "opened up to the potential for insanity." (*Id.*). Counsel then asked the expert to perform more work to find out if Mr. Dieterle was insane at the time of the offense; the expert did the best with the time he had, but counsel indicated another month would be necessary to come to a better conclusion. (*Id.*). Those statements were not an admission of incompetence, nor was filing a motion to continue the trial. And in any event, as explain above, Mr. Dieterle has not shown prejudice from counsel's alleged error.

However, Mr. Dieterle cannot show that his claim is "substantial," because, as the state court determined, he cannot show that he suffered prejudice under *Strickland.* (Dkt. 18 Ex. 19 at 171–72). Accordingly, this claim is denied.

G. Ground Eight

In ground eight, Mr. Dieterle claims ineffective assistance of trial counsel based on the failure to call physician Edward Willey as a witness. (Dkt. 9 at 15). Dr. Willey opined, after examination, that Mr. Dieterle might have been insane at the time of the offense. (*Id.*). Mr. Dieterle asserts that, had Dr. Willey testified, there is a reasonable probability the outcome of the trial would have been different. (*Id.*).

This claim was not raised in the state court and is, therefore, unexhausted and procedurally defaulted. *See* 28 U.S.C. § 2254(b)(1). As with ground seven, Mr. Dieterle cites *Martinez* in attempt to overcome the default. (Dkt. 9 at 16); *see Martinez*, 566 U.S. at 17. However, Mr. Dieterle has not demonstrated that his claim is substantial.

It is well established that "strategic choices [of counsel] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91. Further, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [a habeas court] will seldom, if ever, second guess." *Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). "Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." *Dingle v. Sec'y, Dep't of Corr.,* 480 F.3d 1092, 1099 (11th Cir. 2007).

Given that Dr. Willey's report indicated merely that Mr. Dieterle might have been insane at the time of the victim's murder, the Court cannot say that "no competent attorney" would have chosen to exclude Dr. Willey as a defense witness. Moreover, given the extensive evidence of Mr. Dieterle's attempts to clean up the crime scene and deceive others about his location and the location of the victim, even had counsel erred, there is no reasonable probability that Dr. Willey's testimony would have resulted in a different outcome at trial. Therefore, Mr. Dieterle has not demonstrated the prejudice required by *Strickland*. *See* 466 U.S. at 694. Ground Eight is denied.

H. Grounds Nine & Ten

In ground nine, Mr. Dieterle claims that counsel misadvised him not to testify at trial. (Dkt. 9 at 16). In ground ten, he claims that counsel erred by failing to move for judgment of acquittal or for mistrial based on the improper stacking of inferences. (Dkt. 9 at 18). However, Respondent asserts, and Mr. Dieterle concedes, that these claims, which were added in his amended petition, are untimely. (Dkt. 21 at 20). As Mr. Dieterle withdraws these claims (Dkt. 21 at 20), they are denied.

Any of Mr. Dieterle's allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk shall enter judgment against Mr. Dieterle and close this case.

2. A certificate of appealability (COA) is **DENIED** in this case because Mr. Dieterle cannot make "a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2). And because Dieterle is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 27, 2019.

WILLIAM F. JUNG
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record